**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| WASHINGTON MUTUAL BANK, | ) | CASE NO: 1:07-cv-683 |
| | ) | |
| Plaintiff, | ) | JUDGE PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | VECCHIARELLI |
| CHIAPPETTA *et al.*, | ) | |
| | ) | |
| Defendants. | ) | **REPORT AND RECOMMENDATION** |

This case is before the undersigned United States Magistrate Judge upon

referral for general pretrial supervision including the preparation of Reports and

Recommendations on case-dispositive motions.  (Doc. No. 175.)  This case is a

foreclosure action wherein Plaintiff JP Morgan Chase Bank, N.A. ("JP Morgan"),[1] seeks

foreclosure on a mortgage interest in the residential property of Defendants Patricia

Chiappetta and John Chiappetta located at 25608 Chardon Road, Richmond Heights,

Ohio 44143 ("the Property").  JP Morgan and Defendants American First Federal, Inc.

---

[1] JP Morgan substituted for Washington Mutual Bank ("WaMu") as the plaintiff in
this case on December 2, 2009.  (Doc. No. 114.)

("American"), and Infinity Construction Company ("Infinity") have filed cross-motions for summary judgment.[2]  (Doc. Nos. 204, 201, 203.)  The issue before the Court is the relative lien priority on the Property among the parties to this case.  For the reasons set forth below, the Magistrate Judge recommends the following.

JP Morgan's motion for summary judgment should be granted; that is, JP Morgan should be granted equitable subrogation and given first lien priority on the Property only to the extent of the $287,088.05 used to pay off the prior first and second mortgages on the Property, plus interest, costs, and expenses advanced that are associated with satisfying those prior mortgages.  American's motion for summary judgment should be denied, and Infinity's motion for summary judgment should be granted as it relates to the lienholders other than JP Morgan; therefore, Infinity should have second lien priority on the Property.  Defendant the Ohio Department of Transportation ("ODOT") should have third lien priority, and Defendant the United States Department of Justice ("the USDJ") should have fourth lien priority.

**I.**

**A.**    **Factual Background**

The following facts are not in dispute unless otherwise indicated.  Patricia Chiappetta and John Chiappetta executed two mortgages on the Property that were recorded on January 12, 1998, and April 4, 2000.  (Eric Bovee Aff. ¶¶ 8, 9, Doc. No. 204-1; Commitment, Doc No. 201-1 at 7.)  In 2005, Patricia Chiappetta refinanced the

---

[2]  Infinity filed a "Brief in Support of Lien Validity and Priority" pursuant to this Court's Scheduling Order dated February 22, 2011.  (Doc. No. 203.)  The Court will construe Infinity's Brief as a motion for summary judgment.

Property.  She sought a loan from Long Beach Mortgage Company ("Long Beach"),

whom WaMu allegedly succeeded in interest by operation of law.  (*See* Note, Doc. No.

1-1; Eric Bovee Aff. ¶ 5.)  World Class Title Agency of Ohio, LLC ("World Class") closed

the refinancing loan.  (*See* Committment, Doc. No. 204-1 at 6.)  World Class performed

a title examination of the Property and prepared a Commitment that disclosed the

existence of the first and second mortgages on the Property, but did not disclose the

existence of judgment liens held by FirstMerit Bank, N.A. ("FirstMerit"), Infinity, and

ODOT.  (Eric Bovee Aff. ¶¶ 11-13.)  Those judgment liens are as follows:

- On January 7, 2002, FirstMerit filed with the Cuyahoga County Clerk of Courts in the state of Ohio a certificate of judgment against John Chiappetta and Patricia Chiappetta, number JL-01-160928, in the amount of $1,350,577.72.  (Doc. No. 55-1; D'Mark Mick Aff. ¶ 2, Doc. No. 82.)

- On September 9, 2002, Infinity filed with the Cuyahoga County Clerk of Courts in the state of Ohio a certificate of judgment against John Chiappetta, number JL-02-175834, in the amount of $146,000.  (Doc. No. 1-3; Doc. No. 36-2.)

- On March 16, 2004, ODOT filed with the Cuyahoga County Clerk of Courts in the state of Ohio a certificate of judgment against John Chiappetta, number JL-04-216081, in the amount of $541,417.19.  (Doc. No. 1-3; ODOT Mem. Opp'n at 1, Doc. No. 52.)

Long Beach allegedly intended to have a first priority mortgage on the Property

to secure its refinancing loan.  (Eric Bovee Aff. ¶¶ 18, 20; *see* Lender's Instructions to

Closing Agent, Doc. No. 204-1, at 16; Mortgage, Doc. No. 103, at 5.)  While processing

the refinancing loan, Long Beach obtained a credit report indicating various judgments

against Patricia Chiappetta and John Chiappetta, and a facsimile from a senior loan

coordinator indicating that satisfaction of a judgment in favor of FirstMerit was a

condition of the loan that had not been met.  (Alfio Savarino Depo., Doc. No. 122-1, at

-3-

29:4-35:18; Doc. Nos. 122-2, -5.)  However, Long Beach allegedly relied on the Commitment provided by World Class and did not know about the judgment liens on the Property because World Class's Commitment did not reveal them.  (Eric Bovee Aff. ¶ 14.)

On May 25, 2005, Patricia Chiappetta executed a Promissory Note ("the Note") and obtained a loan from Long Beach in the amount of $436,500.00.[3]  (Note at 1, 3.) On May 31, 2005, $133,680.46 was dispersed to pay off the prior first mortgage, $153,227.59 was dispersed to pay off the prior second mortgage, and $61,260.06 was dispersed to cover settlement charges.  (Settlement Statement, Doc. No. 204-1, at 9.) Patricia Chiappetta obtained a remainder of $88,151.89, $41,180.00 of which was disbursed to pay various unsecured creditors.  (Settlement Statement at 9, 11.)  No money was dispersed and applied to any of the judgment liens on the Property.

As security for the loan, Patricia Chiappetta and John Chiappetta executed a mortgage interest in the Property ("the Mortgage") in favor of Long Beach.[4]  (Doc. No. 1-2.)  Under Paragraph 4 of the Mortgage, there is a handwritten note providing that, "To the best of our knowledge any/and all liens have been subordinated to the First Mortgage," followed by Patricia Chiappetta's and John Chiappetta's initials.  (Mortgage at 5.)  On June 9, 2005, Long Beach filed its mortgage interest with the Cuyahoga County Recorder in the state of Ohio as Instrument Number 200506090788.  (Chicago

---

[3] Only Patricia Chiappetta's signature appears on the copy of the Note provided by JP Morgan.  (Note at 3.)

[4] Both Patricia Chiappetta's and John Chiappetta's signatures appear on the copy of the Mortgage provided by JP Morgan.  (Mortgage at 1-18.)

Title Ins. Co. Preliminary Judicial Report, Doc. No. 1-3, at 5.)

On June 27, 2005, FirstMerit assigned its January 7, 2002, judgment lien to American.  (Doc. No. 55-1 at 16.)  On July 29, 2005, the assignment was filed with the Cuyahoga County Clerk of Courts in the state of Ohio.  (Doc. No. 55-1 at 16.)  On August 29, 2005, American filed a new certificate of judgment with the Cuyahoga County Clerk of Courts for the same amount of money as the January 7, 2002, lien to renew the prior lien.  (*See* Doc. No. 55-1 at 14-15.)  The August 29, 2005, judgment lien is identified as number JL-05-247126.  (Doc. No. 55-1 at 14.)  American mis-spelled Patricia Chiappetta's and John Chiappetta's last name in the certificate of judgment, providing only one "p" in the last name instead of two, thus spelling their last name as "Chiapetta."  (*See* Doc. No. 55-1 at 14-15.)  Patricia Chiappetta's and John Chiappetta's last name is also mis-spelled with only one "p" in the title of the case underlying the judgment lien.  (*See* Doc. No. 55-1 at 14.)

American subsequently filed two other certificates of judgment with the Cuyahoga County Clerk of Courts in the state of Ohio for judgment liens on the Property.  Lien number JL-05-248916 was filed on October 26, 2005, to secure a $448,843.35 judgment against Patricia "Chiapetta" and John "Chiapetta" rendered by the Painesville Common Pleas Court.  (Doc. No. 55-1 at 2-3.)  Lien number JL-05-251155 was filed on November 23, 2005, to secure a $448,843.35 judgment against Patricia "Chiapetta" and John "Chiapetta" rendered by a Lake County court.  (Doc. No. 55-1 at 4-5.)

On July 3, 2006, WaMu became successor-in-interest to Long Beach.  (*See*

-5-

Merger Docs., Doc. No. 6-1;  Eric Bovee Aff. ¶ 5.)

On September 1, 2006, the USDJ filed a certificate of judgment with the Cuyahoga County Recorder in the state of Ohio for a judgment lien on the Property, Instrument Number 200609019007, against John Chiappetta in the amount of $1,079,239.78, plus interest and penalties.  (Doc. No. 1-3.)

On September 25, 2008, WaMu was declared insolvent, the Federal Deposit Insurance Corporation ("FDIC") was appointed Receiver of WaMu, and JP Morgan purchased WaMu's assets from the FDIC for valuable consideration.  (*See* Eric Bovee Aff. ¶¶ 4-7, Doc. No. 106-1; Order 12/02/09, Doc. No. 114; Doc. No. 194 at 24-25.)

### B.    Procedural Background

On March 8, 2007, WaMu filed its complaint in foreclosure.  (Doc. No. 1.)  On December 6, 2007, WaMu filed a motion for summary judgment that sought first lien priority on the Property.  (Doc. No. 34.)  On December 12, 2007, Infinity filed a motion for summary judgment that sought first lien priority on the Property.  (Doc. No. 36.)  On February 4, 2008, ODOT responded in opposition to WaMu's motion for summary judgment.  (Doc. No. 52.)  On September 19, 2008, Magistrate Judge Gallas granted WaMu's motion for summary judgment, denied Infinity's motion for summary judgment, and ruled that WaMu had first lien priority over Infinity and ODOT.  (Doc. Nos. 61, 62.)

While WaMu's and Infinity's cross-motions for summary judgment were pending, American intervened in this case.  (Order 04/28/08.)  On October 2, 2009, WaMu filed a motion for summary judgment asserting first lien priority over American.  (Doc. No. 108.)  On December 2, 2009, JP Morgan substituted for WaMu as the plaintiff.  (Doc.

No. 114.)  There was never a ruling upon the merits of WaMu's motion for summary judgment against American.

On March 15, 2011, the presiding District Judge vacated Magistrate Judge Gallas's September 19, 2008, ruling and returned the issue of lien priority to the undersigned United States Magistrate Judge for reconsideration.  (Doc. No. 193.) Furthermore, on May 15, 2011, the District Judge denied WaMu's pending motion for summary judgment against American as moot.  (Doc. No. 226.)  The parties were permitted to re-brief their positions on lien validity and priority.  (Doc. No. 181.)

On April 13, 2011, American filed its motion for summary judgment.  (Doc. No. 201.)  On April 14, 2011, JP Morgan and Infinity filed their motions for summary judgment.  (Doc. Nos. 204, 203.)  All three parties seek first lien priority on the Property.

On May 5, 2011, American responded to JP Morgan and Infinity (Doc. Nos. 219, 216), and JP Morgan responded to American and Infinity (Doc. No. 217).  Infinity did not file responses to JP Morgan and American; however, Infinity's positions against them are set forth in its motion.

On May 6, 2011, American filed amended responses to JP Morgan and Infinity that appear only to correct minor typographical errors in the original filings.  (Doc. Nos. 218, 220.)  No party opposes these amended filings.

ODOT and the USDJ did not file briefs, motions, or responses regarding lien validity and priority.

On May 20, 2011, Patricia Chiappetta filed responses to JP Morgan and American (Doc. Nos. 231, 230), but she did not respond to Infinity.

-7-

On June 8, 2011, Patricia Chiappetta and John Chiappetta obtained legal counsel.  (Doc. No. 233.)

On September 23, 2011, John Chiappetta filed his "Memorandum Contra to American First Federal Inc.'s Motion for Summary Judgment."  (Doc. Nos. 239, 240.) On September 30, 2011, American replied to John Chiappetta.  (Doc. No. 244.)

On October 6, 2011, John Chiappetta filed his "Memorandum Contra to JP Morgan Chase Bank, N.A.'s Motion for Summary Judgment" (Doc. No. 245), and on October 12, 2011, he filed his affidavit in support (Doc. No. 247).  On October 20, 2011, JP Morgan filed its reply to John Chiappetta's response.  (Doc. No. 249.)

**II.**

This foreclosure action is in federal court as a matter of diversity jurisdiction and there is no dispute that the substantive laws of the state of Ohio govern its disposition. In Ohio, mortgage priority is governed by the date of filing with the county recorder; mortgages "take effect in the order of their presentation."  Ohio Rev. Code § 5301.23(A); *ABN AMRO Mtgs. Group, Inc. v. Kangah*, 126 Ohio St. 3d 425, 426, 934 N.E.2d 924, 926 (Ohio 2010).  Judgment liens take priority in the order that their underlying certificates of judgment are filed with the clerk of courts.  *See* Ohio Rev. Code § 2329.02; *Standard Hardware & Supply Co. v. Bolen*, 115 Ohio App. 3d 579, 582, 685 N.E.2d 1264, 1266 (Ohio Ct. App. 4th Dist. 1996).  The chronological history of the interests that have encumbered the Property is summarized as follows:

- The prior first mortgage on the Property was filed on January 12, 1998.

- The prior second mortgage was filed on April 4, 2000.

-8-

- FirstMerit's judgment lien, later assigned to American, was filed on January 7, 2002.

- Infinity's judgment lien was filed on September 9, 2002.

- ODOT's judgment lien was filed March 16, 2004.

- JP Morgan's mortgage (*i.e.*, the Mortgage) that secured the refinancing loan that paid off the prior first and second mortgages was filed on June 9, 2005.

- American's judgment lien that was intended to renew FirstMerit's January 7, 2002, judgment lien was filed on August 29, 2005.

- American's two other judgment liens were filed on October 26 and November 23, 2005.

- The USDJ's judgment lien was filed on September 1, 2006.

Because the prior first and second mortgages were paid off, it would appear that FirstMerit's January 7, 2002,  judgment lien (later assigned to American) took priority. *See Kangah*, 126 Ohio St. 3d at 426, 934 N.E.2d at 926.  JP Morgan contends, however, that its June 9, 2005, mortgage should take first priority to the extent of the $287,088.05 that were used to pay off the prior first and second mortgages, plus interest, costs, and expenses advanced, pursuant to the doctrine of equitable subrogation.[5]

---

[5] In the alternative, JP Morgan contends that it should be granted priority for $287,088.05 because otherwise American, Infinity, and ODOT would be unjustly enriched by moving forward in lien priority as a benefit of JP Morgan's satisfaction of the prior first and second mortgages.  However, "[e]quitable subrogation has been described as a theory of unjust enrichment, preventing parties from receiving that to which they are not entitled."  *State Sav. Bank v. Gunther*, 127 Ohio App. 3d 338, 346, 713 N.E.2d 7, 13 (Ohio Ct. App. 3d Dist. 1998).  Accordingly, the Court will not consider JP Morgan's unjust enrichment claim separately, but will address it implicitly through its review of JP Morgan's equitable subrogation claim.

American contends that equitable subrogation will not avail JP Morgan, and that its August 29, 2005, judgment lien takes first priority because the certificate of judgment it filed on August 29, 2005, renewed and took the place of the January 7, 2002, judgment lien that was next in line after the prior first and second mortgages were satisfied.

Infinity contends that equitable subrogation will not avail JP Morgan, and that American's August 29, 2005, filing did not operate to renew the January 7, 2002, judgment lien because American mis-spelled Patricia Chiappetta's and John Chiappetta's last name in the certificate of judgment.  Accordingly, Infinity's contends that its judgment lien now has first priority.

Patricia Chiappetta and John Chiappetta offer a series of arguments challenging JP Morgan's standing to foreclose on the Mortgage and this Court's subject matter jurisdiction, as well as the validity of American's January 7, 2002, and August 29, 2005, judgment liens.

The Court will address each argument in due course.

**A.      Standard of Review**

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party can meet this burden in two ways:  by presenting sufficient evidence to indicate there is no genuine issue of material fact; or by arguing that the nonmoving party, after adequate time for discovery, fails to show sufficient evidence to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial.  *See Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).  The trial court has no duty to search the entire case record to establish that it is bereft of a genuine issue of material fact.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989).  The nonmoving party has an affirmative duty to direct the court's attention to specific evidence upon which it seeks to rely.  *Al-Qudhai'een v. Am. W. Airlines, Inc.*, 267 F. Supp. 2d 841, 845 (S.D. Ohio 2003) (citing *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001)).  The lack of such a response by the nonmoving party may result in an automatic grant of summary judgment.  *Reeves v. Fox Television Network*, 983 F. Supp. 703, 709 (N.D. Ohio 1997).

In reviewing summary judgment motions, a court must view all facts and inferences drawn therefrom in a light most favorable to the nonmoving party.  *Pachla v. Saunders Sys., Inc.*, 899 F.2d 496, 498 (6th Cir. 1990).  However, the Court does not weigh the evidence or make credibility determinations.  *Joostberns v. United Parcel Services, Inc.*, 166 F. App'x 783, 787 (6th Cir. 2006).  Moreover, the mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient; there must be evidence on which the jury could reasonably find for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  In other words,

the court should determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.  *Id.* at 251.

When evaluating cross-motions for summary judgment, the court is obligated to analyze each motion on its own merits and view the facts and inferences in the light most favorable to the nonmovant.  *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003).

### B.     JP Morgan's Standing to Pursue This Foreclosure Action, and Whether this Court has Subject Matter Jurisdiction

Patricia Chiappetta represented herself *pro se* when she filed her responses to JP Morgan's and American's motions for summary judgment, and *pro se* plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings.  *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999).  John Chiappetta, however, was represented by counsel when he filed his responses to JP Morgan's and American's motions for summary judgment; therefore, John Chiappetta does not enjoy the benefit of a liberal construction of his arguments.

Patricia Chiappetta and John Chiappetta contend that there is a genuine issue of whether JP Morgan holds the Note and Mortgage.  Patricia Chiappetta cites (1) a notice from the Office of Thrift Supervision indicating that the FDIC was appointed Receiver of WaMu (Doc. No. 231-1), and (2) Section 2.5 of the Purchase and Assumption Agreement between JP Morgan and the FDIC whereby JP Morgan purchased WaMu's assets from the FDIC (Doc. No. 194 at 23), to suggest that JP Morgan never purchased the Note.  Section 2.5 of the Purchase and Assumption Agreement provides the

-12-

following:

> Notwithstanding anything to the contrary in this Agreement, any liability associated with borrower claims for payment of or liability to any borrower for monetary relief, or that provide for any other form of relief to any borrower . . . arising in connection with the Failed Bank's lending or loan purchase activities are specifically not assumed by the Assuming Bank.

(Doc. No. 194 at 23.)  Section 2.5 provides only that JP Morgan did not assume any *liabilities* associated with the assets that JP Morgan purchased.  (Doc. No. 194 at 23.) Therefore, Section 2.5 of the Purchase and Assumption Agreement fails to support Patricia Chiappetta's proposition that JP Morgan does not hold the Note and Mortgage.

John Chiappetta argues that there is a genuine issue of whether Long Beach sold the Note after originating it.  He contends that, if Long Beach sold the Note, the Note and Mortgage could not have been transferred to WaMu and, thereafter, to JP Morgan.  John Chiappetta contends that Paragraph 20 of the Note is evidence of Long Beach's intent to sell the Note; however, the Note does not have a Paragraph 20. Paragraph 20 of the *Mortgage*, however, regards "Sale of Note," but that paragraph only discusses the rights and procedures regarding any sale of the Note (*see* Mortgage ¶ 20); it does not constitute evidence that Long Beach actually sold the Note or had any intention of selling it.  In short, Patricia Chiappetta and John Chiappetta have failed to show with competent, material evidence that there is a genuine issue of whether JP Morgan holds the Note and Mortgage.

John Chiappetta also contends that JP Morgan has failed to meet its summary judgment burden because Mr. Bovee, upon whose affidavit JP Morgan relies, does not have personal knowledge of Long Beach's intentions when it originated the Note.

-13-

Moreover, John Chiappetta contends that Mr. Bovee's affidavit is deficient because Mr. Bovee does not aver how and when JP Morgan became the holder of the Note and Mortgage and whether WaMu met all conditions precedent to foreclosure, and because the affidavit does not have attached to it any evidence of a payment history or default on the Note.  The Court finds John Chiappetta's arguments unavailing.

Affidavits used to support or oppose a motion for summary judgment must be made on personal knowledge.  Fed. R. Civ. P. 56(c)((2)(4).  The Court agrees that it does not appear Mr. Bovee has personal knowledge of Long Beach's intentions when Long Beach originated the Note, as Mr. Bovee avers that he was employed by JP Morgan and not Long Beach; however, this is not fatal to Mr. Bovee's entire affidavit.  See *Chambers v. McLean Trucking Co., Inc.*, 550 F. Supp. 1335, 1338 (M.D. N.C. 1981) (noting that the court "will not strike . . . affidavits in their entirety merely because they contain a few statements as to the affiants' understandings rather than knowledge").  Moreover, John Chiappetta does not explain how Mr. Bovee's lack of personal knowledge as to Long Beach's intentions is fatal to JP Morgan's motion for summary judgment.[6]

---

[6] Regardless of Mr. Bovee's lack of personal knowledge as to Long Beach's intentions, there is an evidentiary basis for the conclusion that Long Beach intended to have first lien priority on the Property when it originated the Note.  Mr. Bovee avers that he is the custodian of JP Morgan's records, has access to and is familiar with those records, and is competent to testify if called as a witness.  (Eric Bovee Aff. ¶¶ 2-3.)  One of the documents to which Mr. Bovee cites that is attached to Mr. Bovee's affidavit is the Lender's Instructions to Closing Agent, which indicates that the mortgage securing Long Beach's refinancing loan was to have first lien priority on the Property.  (Doc. No. 204-1 at 16.)

As to John Chiappetta's contentions that Mr. Bovee's affidavit is deficient for not specifying certain other information in detail, John Chiappetta misconstrues the summary judgment standard.  JP Morgan has pointed to sufficient evidence upon which to base its claim that there are no genuine issue of material fact, so it is John Chiappetta's burden as a nonmoving party to present competent, material evidence rebutting JP Morgan, or to show that JP Morgan cannot meets its evidentiary burden at trial.  John Chiappetta has not done either.[7]

Finally, John Chiappetta contends that this Court does not have subject matter jurisdiction over this case because WaMu did not comply with a notice requirement of the Note and Mortgage before foreclosing on the Mortgage.[8]  For the following reasons, the Court finds that John Chiappetta has failed to adduce sufficient evidence to show there is a genuine issue of whether WaMu sent notice to John Chiappetta.

Paragraph 7(C) of the Note provides the following:

> If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal that has not been paid and all the interest that I owe on that amount.  That date must

---

[7] John Chiappetta was afforded time to conduct discovery and apparently elected not to depose Mr. Bovee regarding his affidavit.

[8] John Chiappetta also states, without any explanation or argument, that JP Morgan failed to provide any evidence that it complied with a grievance procedure set forth in Paragraph 20 of the Mortgage.  (Doc. No. 245 at 3-4.)  The Court will not speculate what John Chiappetta's argument might be; accordingly, the Court cannot address it.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir.1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."); *Meridia Prods. Liab. Litig. v. Abbott Labs.*, 447 F.3d 861, 868 (6th Cir. 2006).

-15-

be at least 30 days after the date on which the notice is delivered or mailed to me.

(Note ¶ 7(C).)  Paragraph 22 of the Mortgage provides, in relevant part, the following:

Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . .  The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given tot he Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property.

(Mortgage ¶ 22.)  Ohio courts have interpreted such language in promissory notes and mortgages to require that notice be given to the debtor as a condition precedent to foreclosure.  See Nat'l City Mortg. Co. v. Richards, 182 Ohio App. 3d 534, 540-42, 913 N.E.2d 1007, 1011-12 (Ohio Ct. App. 10th Dist. 2009).

The Mortgage defines John Chiappetta as a "Borrower."  (Mortgage at 1, Definitions (B).)  Paragraph 8 of the Note regards how notice shall be given:

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

(Note ¶ 8.)  The address set forth in the Note is that of the Property.  (Note at 1.) Accordingly, it appears that WaMu was required to send John Chiappetta notice of default and acceleration at the Property's address.

WaMu alleged in its complaint that notice of default and acceleration was properly given to Patricia Chiappetta and John Chiappetta pursuant to the terms of the Note.  (Compl. ¶ 4.)  John Chiappetta answered that he lacked knowledge or information to believe the veracity of WaMu's allegation and, therefore, generally

-16-

denied it.  (John Chiappetta Answer ¶ 5, Doc. No. 191.)  John Chiappetta now avers

that WaMu did not send him notice pursuant to the terms of the Note and Mortgage.

(John Chiappetta Aff. ¶ 4, Doc. No. 247-1.)  JP Morgan reaffirms in its reply that it sent

three proper notices to the Property's address, and JP Morgan provides copies of the

three separate notices.  (Supp. Eric Bovee Aff. ¶ 7, citing Exs. A, B, and C.)  The Court

finds that John Chiappetta's affidavit is insufficient to create a genuine issue of whether

WaMu satisfied the condition precedent of notice.  Once the party moving for summary

judgment has met its initial burden, the nonmoving party may not rest upon the mere

allegations or denials of its pleadings, but must set forth through competent and

material evidence specific facts showing that there is a genuine issue for trial.  John

Chiappetta's affidavit merely denies that WaMu sent notice without any factual support.

Moreover, it is not clear that John Chiappetta has personal knowledge of whether

WaMu *sent* notice, regardless of whether John received such notice.[9]

        In sum, for the foregoing reasons Patricia Chiappetta and John Chiappetta

have failed to show there is a genuine issue of whether JP Morgan has standing to

foreclose on the Mortgage and whether this Court has subject matter jurisdiction.

---

[9] Moreover, the Court has doubts about whether John Chiappetta was available
to receive such notice.  John Chiappetta stated on the record during a hearing
before this Court on February 15, 2011, that he was incarcerated since July of
2006 (Hearing Tr. 02/15/11 at 4:14-15.)  The first notice that JP Morgan alleges
it sent to the Property address is dated after John Chiappetta stated he was
incarcerated, on September 5, 2006.  (Doc. No. 249-2.)  Although John
Chiappetta avers generally that he lived at the Property and that the Property is
his primary residence, he does not aver that he lived at the Property when
WaMu allegedly sent notice and, if he did not live there at that time, whether he
notified WaMu of a change in his address so that WaMu could send its notices
to him at the different address.  (Doc. No. 247-1.)

## C.   Equitable Subrogation

In some circumstances, the doctrine of equitable subrogation can overcome the general statutory rule that mortgages and other liens take effect in the chronological order they are recorded.  *Wash. Mut. Bank, FA v. Aultman*, 172 Ohio App. 3d 584, 589, 876 N.E.2d 617, 622 (Ohio Ct. App. 2d Dist. 2007).  The doctrine of equitable subrogation has been described as follows:  "Where money is loaned under an agreement that it shall be used in the payment of a lien on real estate, and it is so used, and the agreement is that the one who so loans the money shall have a first mortgage lien on the same lands to secure his money, and through some defect in the new mortgage, or oversight as to other liens, the money can not be made on the last mortgage, the mortgagee has a right to be subrogated to the lien which was paid by the money so by him loaned, when it can be done without placing greater burdens upon the intervening lienholders than they would have borne if the old mortgage had not been released."  *Kangah*, 126 Ohio St. 3d at 427, 934 N.E.2d at 926 (quoting *Straman v. Rechtine*, 58 Ohio St. 443, 51 N.E. 44 (Ohio 1898)).  The doctrine "arises by operation of law when one having a liability or right or a fiduciary relation in the premises pays a debt due by another under such circumstances that he is in equity entitled to the security or obligation held by the creditor whom he has paid."  *Id.* (quoting *State v. Jones*, 61 Ohio St. 2d 99, 399 N.E.2d 1215 (Ohio 1990)).  "The application of equitable subrogation depends upon the facts and circumstances of each case and is largely concerned with the prevention of frauds and relief against mistakes."  *Id.* at 428, 934 N.E.2d at 927.  It also "may be applied to prevent unjust enrichment."  *Jones*, 61 Ohio

-18-

St. 2d at 105, 399 N.E.2d at 1219 (Holmes, J., dissenting); *see State Sav. Bank v. Gunther*, 127 Ohio App. 3d 338, 346, 713 N.E.2d 7, 13 (Ohio Ct. App. 3d Dist. 1998).

The elements of a claim for equitable subrogation are "undeniably present" when a lender advances funds to retire a first mortgage with the intent to be secured by a first mortgage and, because of a mistake, the lender's mortgage is not first in position. *Kangah*, 126 Ohio St. 3d at 428, 621 N.E.2d at 927.  "But equitable subrogation is an equitable remedy that is appropriate only when the equities clearly favor the party asserting it."  *Id.*

Other factors relevant in determining whether a lender is entitled to equitable subrogation include whether the lender was negligent in failing to record its interest in a timely fashion, and whether other lienholders would be placed in a worse position (*i.e.*, suffer new burdens) if the lender were permitted to take priority over them.  See *id.*  A lender's negligence, alone, has been enough to defeat equitable subrogation, *id.* (citing *Jones*, 61 Ohio St. 2d at 103, 399 N.E.2d 1215), but some courts have clarified that only "culpable negligence," rather than "mere mistake," bars equitable subrogation, *Leppo, Inc. v. Kiefer*, Nos. 20097 *and* 20105, 2001 WL 81262, at *2 (Ohio Ct. App. 9th Dist. Jan 31, 2001), *Aultman*, 172 Ohio App. 3d at 594, 876 N.E.2d at 625.  "[N]umerous Ohio courts have held the doctrine of equitable subrogation will not be used to benefit parties who were negligent in their business transactions and who were obviously in the best position to protect their own interests."  *Wells Fargo Fin. Leasing, Inc. v. Rinard*, No. 07-CV-8, 2008 WL 316088, at *3 (Ohio Ct. App. Feb. 4, 2008) (collecting cases).  A failure to follow ordinary business practices to protect one's

-19-

interests also weighs against equitable subrogation.  *See Aultman*, 172 Ohio App. 3d at

593, 876 N.E.2d at 625.

JP Morgan contends that additional factors entitle it to equitable subrogation:

- JP Morgan was a bona fide purchaser of the first and second mortgages for value while American, Infinity, and ODOT obtained judgment liens with no expectation of priority or security;

- If JP Morgan were denied equitable subrogation, the other lienholders would be unjustly enriched;

- American, Infinity, and ODOT would not be placed in a worse position if JP Morgan were granted equitable subrogation because at the time FirstMerit, Infinity, and ODOT filed their certificates of judgment, they could not expect to have greater priority than the existing first and second mortgages, and JP Morgan seeks priority for payment on only the $287,088.05 that were expended to satisfy the prior first and second mortgages, plus interest, costs, and expenses advanced.

JP Morgan does not explain the relevance of the fact that it was a bona fide

purchaser of the prior first and second mortgages for value while American, Infinity, and

ODOT were not.  The Court is not persuaded that the mere fact JP Morgan bargained

and paid for first lien position justifies giving JP Morgan's mortgage priority, as priority is

generally established by properly *recording* one's interest, not simply purchasing it, and

JP Morgan had a responsibility to determine whether its investment was secure.

Indeed, "a bona fide purchaser for value is charged with constructive notice of all prior

interests recorded in his chain of title," and "is obligated to examine . . . those

instruments which, through due diligence, could reasonably be expected to exist in the

record chain of title."  *Rinard*, 2008 WL 316088, at *2 (citing *Emrick v. Multicon

Builders, Inc.*, 57 Ohio St. 3d 107, 566 N.E.2d 1189 (Ohio 1991), and *Spring Lakes,

Ltd. v. O.F.M. Co.*, 12 Ohio St. 3d 333, 467 N.E.2d 537 (1984)).

Furthermore, there is an insufficient basis to conclude that FirstMerit, Infinity, and ODOT did not have any expectations of security and priority in their judgment liens, as the very purpose of filing certificates of judgment and obtaining judgment liens is to secure one's favorable judgments (for which parties certainly expend money to pursue and obtain in court) and establish a priority for payment of those judgments in the event there is foreclosure upon the collateral property.

And, although equitable subrogation may be granted to prevent unjust enrichment, the Court is not persuaded that it would necessarily be unjust to allow junior lienholders to take priority over a purported senior lienholder if the purported senior lienholder failed to investigate properly whether its investment was secure.

But JP Morgan contends that Long Beach properly relied on World Class's title examination, and that JP Morgan should not suffer the consequences of World Class's mistake in failing to discover the judgment liens on the Property:

> Title companies are responsible for obtaining releases or subordinations of any liens that appear on the Commitment—without input by the lender other than the provided closing instructions.  It is the common function of the lender to take the application and provide closing instructions to the title company, an agent of the borrower.  The title company then must ensure that prior liens are paid or releases are obtained in conformity with the closing instructions.  To require a lender to ensure prior liens are paid and/or releases are obtained would usurp the traditional and long standing role of the title company and impose an unreasonable duty on a Bank.

(JP Morgan's Mot. 6.)  JP Morgan cites World Class's Commitment form and Settlement Statement in support of its contention that World Class worked for Patricia Chiappetta, not Long Beach.  (*See* Doc. No. 204-1 at 6-20.)  JP Morgan also asserts that title agencies cannot be agents of lenders because the Real Estate Settlement

Procedures Act of 1974, 12 U.S.C. § 2608, "requires that for a federally regulated mortgage loan, a party referring a borrower to a title company may not require that the borrower use that particular title company."  (JP Morgan's Mot. 6.)  And JP Morgan notes an unpublished bankruptcy case from the United States Bankruptcy Court for the Northern District of Ohio, *In re Aleksin v. MERS*, case number 05-5067, in support of its proposition that "a title company [works] for the borrower to close a loan" and, therefore, "[a]ny actions of the title company . . . cannot be imputed to the innocent Lender."[10]  (JP Morgan's Mem. 6-7.)

The defendants fail to argue or challenge with competent, material evidence that World Class was not Long Beach's agent.  Accordingly, there is no genuine issue of material fact on this issue.  Moreover, although American contends that Long Beach had been placed on notice of FirstMerit's judgment lien by virtue of a credit report and a facsimile from a senior loan coordinator indicating that the underlying *judgment* had not been satisfied, the defendants fail to argue or challenge with competent, material evidence that it was not a reasonable, ordinary business practice for Long Beach to rely on World Class's title examination; therefore, there is no genuine issue that Long Beach acted reasonably pursuant to ordinary business practices to rely on World Class's title examination in this case.

American and Infinity contend, however, that they would be placed in a worse position if JP Morgan were granted priority over their judgment liens because the

---

[10]  JP Morgan attached a copy of *Aleksin* to its motion for summary judgment. (Doc. No. 204-2 at 1.)

refinancing loan that JP Morgan's mortgage secures is significantly greater in value than the value of the prior first and second mortgages.  American and Infinity point to the fact that the total value of the first and second mortgages at the time they were paid in full was $287,088.05 and the refinancing loan was for $436,500.00.  But American and Infinity have not provided competent, material evidence of the value of the prior first and second mortgages at the time they filed their judgment liens, so there is no basis to conclude that American and Infinity would actually be placed in a worse position if JP Morgan were granted equitable subrogation.  *Cf. Kangah*, 126 Ohio St. 3d at 429, 934 N.E.2d at 928 (recognizing that the holder of a second mortgage would be placed in a worse position if a lender who refinanced the first mortgage were granted equitable subrogation because the amount of money for which the lender sought priority was greater than the value of the first mortgage *at the time the holder of the second mortgage recorded its second mortgage*).[11]

Furthermore, JP Morgan explains that American and Infinity would not be placed in a worse position because JP Morgan seeks only the $287,088.05 used to pay off the prior first and second mortgages, plus interest, costs, and expenses advanced. Ohio courts have recognized that junior lienholders are not placed in a worse position

---

[11]  Infinity also argues that "[b]y permitting the Chiappettas to pledge as loan collateral property upon which Infinity held a judgment lien in order to allow the Chiappettas to pay off unsecured creditors and receive $88,152 dollars in cash, Infinity was placed in a worse position, while the refinancing bank that ignored Infinity's judgment lien of record garnered significant fees from the mortgage proceeds."  (Infinity Mot. 7.)  The Court understands Infinity's dissatisfaction; however, the Court is not persuaded that this alleged change in position is the type that weighs against granting equitable subrogation, as Infinity does not cite any case law in support.

when a lender obtains equitable subrogation only to the extent that it satisfied a prior senior mortgage because the junior lienholders would be subordinated to exactly the same amount of money as they had been before the lender satisfied the prior senior mortgage.  See *Aultman*, 172 Ohio App. 3d at 594, 876 N.E.2d at 625; *Countrywide Home Loans, Inc. v. Korb*, No. 2010-G-2969, 2011 WL 1662248, at *4 (Ohio Ct. App. 11th Dist. Apr. 29, 2011).  Accordingly, the Court finds that American and Infinity would not be placed in a worse position if JP Morgan were granted equitable subrogation on the $287,088.05 used to satisfy the prior first and second mortgages, plus interest, costs, and expenses advanced that are associated with satisfying those prior mortgages.[12]

In sum, there is no genuine issue that it was a reasonable, ordinary business practice for Long Beach to rely on World Class's Commitment; that Long Beach did not know that the Property was encumbered by other interests when it loaned Patricia Chiappetta money to pay off the prior first and second mortgages; that Long Beach intended its refinancing loan to obtain senior priority in place of the prior first and second mortgages; that JP Morgan is the holder of the Note and Mortgage; and that none of the other lienholders would be placed in a worse position if JP Morgan were granted equitable subrogation only on the amount of money used to satisfy the prior first and second mortgages.  Therefore, JP Morgan's motion should be granted; that is,

---

[12] None of the defendants have challenged whether interest, costs, and expenses advanced that are associated with satisfying a prior mortgage may be included in the sum of money for which a lender may obtain equitable subrogation.

-24-

JP Morgan should be granted equitable subrogation only to the extent of the
$287,088.05 used to satisfy the prior first and second mortgages, plus interest, costs,
and expenses advanced that are associated with satisfying those prior mortgages.[13]

### D.    The Other Lienholders' Priorities

Patricia Chiappetta and John Chiappetta argue that American's January 7,
2002, and August 29, 2005, judgment liens are void *ab initio* because the state court
that rendered the judgment underlying those judgment liens did not have personal
jurisdiction over Patricia Chiappetta and John Chiappetta, as the complaint in that case
mis-spelled Patricia Chiappetta's and John Chiappetta's last name with one "p," as
"Chiapetta."[14]  For the following reasons, this argument lacks merit.

---

[13]  John Chiappetta contends that JP Morgan is not entitled to equitable
subrogation because John Chiappetta's name is misspelled as "Chiapetta" on
the Settlement Statement.  (Doc. No. 245 at 3.)  John Chiappetta does not
explain and does not cite any law supporting why such a misspelling
disqualifies JP Morgan from equitable subrogation.  The Court will not
speculate what John Chiappetta's argument might be; accordingly, this
argument is waived.  *See McPherson*, 125 F.3d at 995-96; *Meridia Prods.
Liab. Litig.*, 447 F.3d at 868.

[14]  John Chiappetta also states, without any explanation or argument, that this
Court lacks subject matter jurisdiction to address Infinity's and ODOT's claims
because WaMu did not own the Note and Mortgage when the complaint was
filed in this case.  And Patricia Chiappetta states, without any explanation or
argument, that American's judgment lien should have been recorded in Lake
County because that is where the Property is located.  The Court will not
address the matter raised by John Chiappetta because it has been asserted
by counsel in a perfunctory manner.  *See McPherson*, 125 F.3d at 995-96;
*Meridia Prods. Liab. Litig.*, 447 F.3d at 868.  Moreover, the Court will not
address the matter raised by Patricia Chiappetta because, although Patricia
Chiappetta represents herself *pro se* and *pro se* plaintiffs enjoy the benefit of
a liberal construction of their pleadings and filings, *Boswell v. Mayer*, 169 F.3d
384, 387 (6th Cir. 1999), the Court is not required to make a *pro se* plaintiff's
arguments for her because "[s]uch a mandate would 'require the courts to
explore exhaustively all potential claims of a pro se plaintiff, . . . [and] would

Patricia Chiappetta attached to her response to American's motion for summary judgment copies of case summaries of a cognovit judgment and judgment lien rendered in the lawsuit against Patricia Chiappetta and John Chiappetta underlying American's judgment liens.  (Doc. No. 230-2.)  The summaries indicate that the lawsuit is captioned "FIRSTMERIT BANK N.A. ET AL vs. JOHN CHIAPETTA ET AL."  (Doc. No. 230-2.)  Patricia Chiappetta and John Chiappetta cite *Owners Insurance Company v. Blakemore*, No. L-01-1342, 2002 WL 91287 (Ohio Ct. App. 6th Dist. Jan. 25, 2002), for the proposition that the state court that rendered the judgment underlying American's judgment liens lacked personal jurisdiction over Patricia Chiappetta and John Chiappetta and, therefore, the judgment lien is void *ab initio*.

In *Blakemore*, the appellant argued that the trial court committed reversible error by concluding it had jurisdiction to render final judgment, via an entry of default judgment, against the appellant when his name had been mis-spelled in the complaint and he had never appeared in the case except for the purpose of filing a motion for relief from judgment.  *Blakemore*, 2002 WL 91287, at *1.  Upon reviewing Ohio Rule of Civil Procedure 3(A), the Court found that the proper procedure for commencing an action wherein a defendant is misnamed in the complaint is to amend the complaint. *Id.* The court concluded that the trial court's entry of default judgment was void *ab initio* because the plaintiff never amended its complaint with the defendant's properly spelled

---

. . . transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party,'" *Crawford v. Crestar Foods*, No. 98-3144, 2000 WL 377349, at *2 (6th Cir. 2000) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

-26-

name, even though the plaintiff had properly perfected service on the defendant.  *Id.*

But personal jurisdiction may be acquired either by service of process upon the defendant, the voluntary appearance and submission of the defendant or his legal representative, or by certain acts of the defendant or his legal representative which constitute an involuntary submission to the jurisdiction of the court.  *Maryhew v. Yova*, 11 Ohio St. 3d 154, 156, 464 N.E.2d 538, 540 (Ohio 1984).  Lack of personal jurisdiction is an affirmative defense that may be waived when a defendant fails to raise it before participating in legal proceedings.  *See Davis v. Davis*, No. 82343, 2003 WL 22052785, at *2 (Ohio Ct. App. 8th Dist. Sept. 4, 2003).  American cites to evidence that Patricia Chiappetta and John Chiappetta answered and confessed in the state court that they were indebted to FirstMerit.  (Doc. No. 244-1.)  In other words, unlike the defendant in *Blakemore*, Patricia Chiappetta and John Chiappetta waived lack of personal jurisdiction as a defense by participating in the legal proceedings against them.[15]  Accordingly, the argument that American's judgment liens are void *ab initio* is unavailing.

Infinity argues that American's failure to correctly spell Patricia Chiappetta's and John Chiappetta's last name in American's August 29, 2005, *certificate of judgment*

---

[15]  Furthermore, as American points out, Patricia Chiappetta's and John Chiappetta's argument that the trial court lacked personal jurisdiction over them would appear to be precluded by the *Rooker-Feldman* doctrine, which invalidates claims "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

-27-

makes the lien inoperative as a renewal of the January 7, 2002, judgment lien.  For the following reasons, the Court finds Infinity's argument meritorious and that American has failed to show as a matter of law that it is entitled to lien priority based on a renewal of the January 7, 2002, judgment lien.

Judgment liens other than those in favor of the State become dormant and do not operate as liens on the judgment debtor's property if they are not renewed after five years.  Ohio Rev. Code § 2329.07(A)(1).  It is not disputed that American filed its August 29, 2005, judgment lien within five years of FirstMerit's January 7, 2002, judgment lien and that American mis-spelled Patricia Chiappetta's and John Chiappetta's last name in the certificate of judgment.  American contends, pursuant to *Reed v. Hardman*, No. 85272, 2005 WL 2039204 (Ohio Ct. App. 8th Dist. Aug. 25, 2005), that a mis-spelled judgment debtor's name in a certificate of judgment does not invalidate the certificate of judgment.

American's argument is moot as it relates to JP Morgan because the Court has already found that JP Morgan should be entitled to take first priority for the amount of money expended to pay off the prior first and second mortgages on the Property.

Furthermore, *Reed* fails to support American's proposition that a mis-spelled judgment debtor's name in a certificate of judgment is not fatal to the judgment lien. Generally, "where an incorrect name is recorded pertaining to a judgment lien, such lien is not duly recorded, and will not be noticed to a subsequent purchaser without actual notice."  *Kay Gee Prod. Co. v. Salem*, 120 Ohio App. 3d 529, 532, 698 N.E.2d 485, 487 (Ohio Ct. app. 8th Dist. 1997).  The court in *Reed* recognized an exception to the rule:

-28-

when a party properly files a lien under the correctly spelled name, *and the clerk of courts or the county recorder* mistakenly dockets and/or indexes the lien under the wrong name, the party filing the lien is protected and its lien has priority over subsequent liens.  *Reed*, 2005 WL 2039204, at *7 (citing *Bolen*, 115 Ohio App. 3d at 582, 685 N.E.2d at 1266).  Here, as it is undisputed that American mis-spelled Patricia Chiappetta's and John Chiappetta's last name and not the clerk of courts or the county recorder, the exception recognized in *Reed* is inapplicable.

American also argues that the mis-spelling of Patricia Chiappetta's and John Chiappetta's last name in its August 29, 2005, judgment lien is not fatal to the judgment lien because Patricia Chiappetta's and John Chiappetta's last name is spelled closely enough to the proper spelling to be valid pursuant to the doctrine of *idem sonans*.  The doctrine of *idem sonans* provides that a mistake in the spelling of a name of a party is immaterial if both forms of spelling sound the same.  *Nat'l Packaging Corp. v. Belmont, 47 Ohio St. 3d 86, 88 n.1, 647 N.E.2d 373, 374 n.1 (Ohio Ct. App. 1st Dist. 1998)* (quoting 70 Ohio Jur. 3d *Names* § 18, at 21-22 (1986)).  Infinity argues, however, that although Ohio courts have applied this doctrine on occasion in the past, modern courts hold that "the doctrine of *idem sonans* is inapplicable to names that are misspelled in judgment-lien name indexes."  *Id.* at 89, 547 N.E.2d at 375.  American cites no legal authority to the contrary.[16]

---

[16] American's argument that the mis-spelling of Patricia Chiappetta's and John Chiappetta's last name is immaterial and that its August 29, 2005, judgment lien renewed FirstMerit's January 7, 2002, judgment lien is further undermined by the fact that the Preliminary Judicial Report prepared by Chicago Title Insurance Company and filed with WaMu's complaint on March 8, 2007, does

Finally, American contends that Infinity cannot argue that it has priority over American by virtue of American's alleged failure to renew its judgment lien because Infinity is not a bona fide purchaser for value.  American provides no explanation of this argument and cites no legal authority in support.  Accordingly, this argument is not persuasive.  *See* *McPherson*, 125 F.3d at 995-96; *Meridia Prods. Liab. Litig.*, 447 F.3d at 868.

In short, American has failed to show that it is entitled to lien priority over Infinity as a matter of law because it has failed to show that its August 29, 2005, judgment lien renewed the January 7, 2002, judgment lien.  Accordingly, American's motion for summary judgment should be denied, and Infinity's motion for summary judgment should be granted as it relates to the lienholders other than JP Morgan; that is, Infinity should be given lien priority over the lienholders other than JP Morgan.

Furthermore, because American has failed to show that the mis-spelling of Patricia Chiappetta's and John Chiappetta's last name in its judgment liens is immaterial, that it renewed the January 7, 2002, judgment lien, and that it is entitled to priority as a matter of law, ODOT and the USDJ should obtain third and fourth lien priority on the Property, respectively.

### III.

For the foregoing reasons, the Magistrate Judge recommends the following. JP Morgan's motion for summary judgment should be granted; that is, JP Morgan

---

not indicate in its title examination of the Property any judgment liens in favor of either FirstMerit or American.  (Doc. No. 1-3 at 4-5.)

should be granted equitable subrogation and given first lien priority on the Property only

to the extent of the $287,088.05 used to pay off the prior first and second mortgages on

the Property, plus interest, costs, and expenses advanced that are associated with

satisfying those prior mortgages.  American's motion for summary judgment should be

denied, and Infinity's motion for summary judgment should be granted as it relates to

the lienholders other than JP Morgan; therefore, Infinity should have second lien priority

on the Property.  ODOT should have third lien priority, and the USDJ should have fourth

lien priority.

s/ *Nancy A. Vecchiarelli*
U.S. MAGISTRATE JUDGE


Date:  November 8, 2011


**OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1).  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).**