# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| JP MORGAN CHASE BANK, N.A, | ) | CASE NO: 1:07-cv-683 |
| | ) | |
| Plaintiff, | ) | JUDGE PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | VECCHIARELLI |
| CHIAPPETTA *et al.*, | ) | |
| | ) | |
| Defendants. | ) | **REPORT AND RECOMMENDATION** |

This case is before the undersigned United States Magistrate Judge upon referral for general pretrial supervision including the preparation of Reports and Recommendations on case-dispositive motions. (Doc. No. 175.)  This case is a foreclosure action wherein Plaintiff JP Morgan Chase Bank, N.A. ("JP Morgan"), seeks foreclosure on a mortgage interest in the residential property of Defendants Patricia Chiappetta and John Chiappetta (collectively, "Defendants") located at 25608 Chardon Road, Richmond Heights, Ohio 44143 ("the Property").  JP Morgan and Defendants have filed cross-motions for summary judgment.  (Doc. Nos. 265, 266, 268, 270, 271, 272.)  The issue before the Court is whether JP Morgan is entitled to judgment and foreclosure under the terms of the relevant note and mortgage.  For the reasons set forth below, the Magistrate Judge recommends that the Court DENY Defendants' motion for summary judgment (Doc. No. 266) and GRANT JP Morgan's motion for summary judgment (Doc. No. 265).

## I. Background

**A. Factual Background**

The following facts are not in dispute. In May 2005, Patricia Chiappetta executed a promissory note and obtained a loan from Long Beach Mortgage Company ("Long Beach"), in the amount of $436,500.00. (Complaint at Ex. A ("Note"), Doc. No. 1-1.) As security for the loan, Defendants executed a mortgage interest in the property, in favor of Long Beach. (Complaint at Ex. B ("Mortgage"), Doc. No. 1-2.) Although John Chiappetta was not a party to the Note, he was named as a "Borrower" in the Mortgage. (Mortgage at 1, Doc. No. 1-2 at 1.) Paragraph 22 of the Mortgage required Long Beach to give Defendants notice prior to accelerating the sums secured by the Mortgage:

> 22. Acceleration; Remedies. Lender shall give Notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property.

(Mortgage at 13, Doc. No. 1-2 at 13.)

On May 31, 2005, Long Beach disbursed: $133,680.46 to pay off a prior first mortgage on the Property, $153,227.59 to pay off a prior second mortgage, and $61,260.06 to cover settlement charges. (4/13/2011 Affidavit of Erik Bovee at Ex. 2 ("Settlement Statement"), Doc. No. 204-1 at 9.) Patricia Chiappetta obtained a

remainder of $88,151.89, of which $41,180.00 was disbursed to pay various unsecured creditors. (*Id*. at 9, 11, Doc. No. 204-1 at 9, 11.) On July 3, 2006, Washington Mutual Bank ("WaMu") became successor-in-interest to Long Beach. (Affidavit of William L. Lynch ("Lynch Aff.") at ¶¶ 7-8, Doc. No. 6-1 at ¶¶ 7-8.)

Patricia Chiappetta failed to make the payments required under the terms of the Note. (Transcript of 2/15/2011 Hearing at 20:19-22, Doc. No. 273 at 20:19-22.) On September 5, 2006, WaMu mailed a Notice of Intent to Accelerate, addressed to Patricia Chiappetta, to the Property. (10/19/2011 Affidavit of Eric Bovee ("10/19/11 Bovee Aff.") at Ex. A ("9/05/2006 Notice"), Doc. No. 249-2.) WaMu sent additional notices, addressed only to Patricia Chiappetta, on November 6, 2006 and December 5, 2006. (10 /19/ 2011 Bovee Aff. at Ex. B ("11/06/2006 Notice", Doc. No. 249-3; 10/19/2011 Bovee Aff at Ex. C ("2/05/2006 Notice"), Doc. No. 249-4.)

### B. Procedural Background

The relevant proceedings are as follows:

On March 8, 2007, WaMu filed its Complaint in foreclosure against Defendants, Infinity Construction Company ("Infinity"), the Ohio Department of Transportation ("ODOT"), and the United States Department of Justice ("USDOJ") . (Complaint, Doc. No. 1.) The Complaint was accompanied by copies of the Note and the Mortgage between Defendants and Long Beach. (Note, Doc. No. 1-1; Mortgage, Doc. No. 1-2.) On that date, WaMu also filed the affidavit of Rosa Salgado ("Salgado Aff."), attesting that: (1) WaMu was the owner and holder of the Note and Mortgage; and (2) due to Patricia Chiappetta's default, there was due on the Note: (a) principal in the amount of $431,568.53, exclusive of interest, costs and attorneys fees; and (b) interest on the

unpaid principal at the rate of 7.65% from October 1, 2006. (Salgado Aff. at ¶¶ 2, 8, 9, Doc. No. 3 at ¶¶ 2, 8, 9.) WaMu also filed the affidavit of Donna Hardy ("Hardy Aff.") attesting that the original interest rate of the Note was 7.65%, and that, under the terms of the Note, the interest rate would change on June 1, 2007 and every six months thereafter. (Hardy Aff. at ¶ 2; Doc. No. 4 at ¶ 2.)[1] On March 22, 2007, WaMu filed a Notice of Merger Documents (Doc. No. 6), which included: (1) the affidavit of WaMu Secretary William L. Lynch ("Lynch Aff."), who attested that WaMu was the successor in interest to Long Beach by operation of law as a result of corporate restructuring and the merger of Long Beach into a trust of which WaMu was the sole beneficiary; and (2) copies of the documents memorializing the restructuring and the trust. (Lynch Aff. at ¶¶ 3-8, Exs. A-E, Doc. No. 6-1 at ¶¶ 3-8, Exs. A-E.)

On February 6, 2008, American First Federal, Inc. ("American") moved to intervene as a defendant, asserting an interest in the case on the basis of judgment liens on the Property. (Amended Motion to Intervene, Doc. No. 54.) On April 28, 2008, the Court granted American's motion to intervene. (*See* Dkt. No. 1:07-683, entry at 4/28/2008.)

On September 1, 2009, WaMu filed a motion to substitute JP Morgan as plaintiff in this case, alleging that JP Morgan had acquired the assets and liabilities of WaMu from the Federal Deposit Insurance Corporation. (Motion to Substitute, Doc. No. 101.) After American opposed the motion, WaMu filed a supplement to its motion to

---

[1] Paragraph 4 of the Note sets forth the initial interest rate, as well as the schedule for the subsequent rate changes and the basis for calculating the amount of the change in rate. (Note at ¶ 4, Doc. No. 1-1 at ¶ 4.)

substitute (Doc. No. 106), which included the September 9, 2009 affidavit of Eric Bovee ("9/09/2009 Bovee Aff."), attesting that: (1) prior to September 25, 2008, WaMu was the owner of the Note and Mortgage; (2) on September 25, 2008, the Office of Thrift Supervision declared WaMu insolvent and appointed the FDIC receiver of WaMu; (3) on that same date, JP Morgan and the FDIC entered into a purchase and assumption agreement, whereby JP Morgan acquired all of the assets of WaMu; and (4) as a result of the purchase and acquisition agreement, JP Morgan was the "present owner" of the Note and Mortgage. (9/09/2009 Bovee Aff. at ¶¶ 3-7, Doc. No. 106-1 at ¶¶ 3-7.) A copy of the purchase and assumption agreement, as well as an affidavit from an FDIC officer attesting to the transfer of assets, accompanied the affidavit. (Purchase Agreement, Doc. No. 106-2; FDIC Affidavit, Doc. No. 106-3.)

On December 2, 2009, the Court granted WaMu's motion to substitute JP Morgan as plaintiff, noting that the supplemental information provided by WaMu was "sufficient to allay . . . its concerns" regarding whether JP Morgan had acquired the Note and Mortgage. (Order, Doc. No. 114.)

On November 8, 2011, this Court issued a report and recommendation addressing cross-motions for summary judgment filed by JP Morgan, Infinity and American, as well as responses to those motions filed by Defendants. (11/08/2011 Report and Recommendation ("11/08/2011 R&R"), Doc. No. 250.) In addition to resolving the priority of the liens on the Property, this Court addressed Defendants' arguments and determined that there was no genuine issue of fact regarding whether: (1) JP Morgan had actually purchased the Note and Mortgage; and (2) WaMu had complied with the notice provision in the Mortgage. (11/08/2011 R&R at 12-17, Doc.

No. 250 at 12-17.) On September 21, 2012, the District Judge adopted the report and recommendation in its entirety. (Order, Doc. No. 258.)

On November 8, 2012, JP Morgan filed a motion for summary judgment, seeking a finding of default on the note and a decree in foreclosure of the Mortgage. (JP Morgan Summary Judgment Motion, Doc. No. 265.) On November 12, 2012, Defendants filed a motion for summary judgment, requesting that the Court dismiss JP Morgan's complaint. (Defendants' Summary Judgment Motion, Doc. No. 266.) On December 10, 2012, Defendants filed their opposition to JP Morgan's summary judgment motion. (Defendants' Opposition, Doc. No. 268.) On December 12, 2012, JP Morgan filed its opposition to Defendants' summary judgment motion. (JP Morgan Opposition, Doc. No. 270.) On December 26, 2012, JP Morgan filed its reply in support of its summary judgment motion. (JP Morgan Reply, Doc. No. 271.) On December 27, 2012, Defendants filed their reply in support of their summary judgment motion. (Defendants' Reply, Doc. No. 272.)

## II.    Law and Analysis

### A.    Standard of Review

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party can meet this burden in two ways: by presenting sufficient evidence to indicate there is no genuine issue of material fact; or by arguing that the nonmoving party, after adequate time for discovery, fails to show sufficient evidence to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleadings, but must produce evidence that results in a conflict of material fact to be resolved by a jury. *See Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). The court is not required to search the entire record to establish that it is bereft of a genuine issue of material fact. *Al-Qudhai'een v. Am. W. Airlines, Inc.*, 267 F. Supp. 2d 841, 845 (S.D. Ohio 2003) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989)). The nonmoving party has an affirmative duty to direct the court's attention to specific evidence upon which it seeks to rely. *Id.* (citing *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001)).

In reviewing summary judgment motions, a court must view the evidence in a light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Pachla v. Saunders Sys., Inc.*, 899 F.2d 496, 498 (6th Cir. 1990). In addition, the Court does not weigh the evidence or make credibility determinations. *Joostberns v. U. Parcel Servs., Inc.*, 166 F. App'x 783, 787 (6th Cir. 2006). The determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986).

The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to defeat a motion for summary judgment; there must be evidence on which the jury could reasonably find for the nonmoving party. *Id.*

Ultimately, the court should determine whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 251-52.

### B. Application of Standard

Here, JP Morgan argues that there is no genuine issue of material fact with respect to the elements of foreclosure, and that it is entitled to judgment on the Note and Mortgage. Defendants argue that they are entitled to summary judgment – and to the dismissal of the Complaint – because: (1) WaMu failed to satisfy a condition precedent to foreclosure; and (2) WaMu lacked standing to bring this action and, thus, JP Morgan could not be properly substituted as plaintiff. Because Defendants' arguments concern the validity of this action, this Court addresses them first.

### 1. WaMu Satisfied the Condition Precedent of Notice.

Defendants argue that WaMu failed to satisfy the notice provision of the Mortgage because it mailed notice of its intent to accelerate to Patricia Chiappetta, but not to John Chiappetta. There is no dispute that, under Ohio law, "a term in a mortgage such as one requiring prior notice of a default or acceleration to the mortgagor is not an affirmative defense but rather a condition precedent." *U.S. Bank v. Detweiler*, 946 N.E.2d 777, 783, 191 Ohio App.3d 464, 472 (Ohio App. Ct. 2010). In order to prevail on summary judgment, a plaintiff seeking foreclosure must establish that there is no genuine issue of material with respect to whether it satisfied the relevant conditions precedent in the mortgage at issue. *See, e.g., Detweiler*, 946 N.E.2d at 784, 191 Ohio App.3d at 472 (denying the bank summary judgment because there was a genuine

-8-

issue of material fact regarding whether the bank had satisfied a condition precedent to foreclosure). According to Defendants, because WaMu did not satisfy the notice requirement of the Mortgage, JP Morgan is not entitled to foreclosure in this case, and the Complaint must be dismissed. JP Morgan argues that its notice to Patricia Chiappetta was sufficient to satisfy the notice provision.

Defendants' argument on this point is not well taken. As a preliminary matter, this Court has already determined that WaMu satisfied the notice provision of the Mortgage.[2] (11/08/2011 R&R at 12-17, Doc. No. 250 at 12-17.) Defendants argue that "subsequently decided Ohio cases that reversed judgment when the acceleration provision in the mortgage was not complied with" are sufficient reason for this Court to re-examine its prior conclusion. (Defendants' Reply at 3, Doc. No. 272 at 3.) Defendants apparently refer to various cases, cited in their Summary Judgment Motion, in which Ohio courts denied summary judgment to foreclosure plaintiffs who had not complied with the notice provisions in the relevant mortgages. (Defendants' Summary Judgment Motion at 5-8, Doc. No. 266 at 5-8.) None of these cases, however, state anything other than well established Ohio law that, in this context, "the provision of

---

[2] During an October 11, 2012 conference in this matter, this Court "advised all of the parties that it would not revisit issues that have already been determined or admitted, issues that should have been raised earlier, or issues that are inconsistent with prior positions of a particular party. *These issues include, but are not limited to, lien priority and the validity of the mortgage.*" (10/11/2012 Minutes, Doc. No. 264 (emphasis added).) Defendants' decision to raise the notice issue again – against this Court's instructions and without any sufficient basis for doing so – serves only to complicate and prolong litigation that has already been complicated and protracted. Defendants and their Counsel are advised that similar behavior in the future could result in sanctions.

-9-

notice is a condition precedent." *Nat'l City Mortg. Co. v. Richards*, 913 N.E.2d 1007, 1013, 182 Ohio App.3d 534, 542 (Ohio App. Ct. 2009). This Court acknowledged as much in determining this issue in its prior report and recommendation in this case. (11/08/2011 R&R at 16, Doc. No. 250 at 16.)[3]

Moreover, even if this Court had not already decided this issue, the terms of the Mortgage itself foreclose Defendants' argument. Paragraph 15 of the Mortgage governs notices between the parties. (Mortgage at 10, Doc. 1-2 at 10.) In relevant part, it provides:

> All notices given by Borrower or Lender in Connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. *Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise*. The notice shall be sent to the Property Address unless Borrower has designated a substitute notice address by notice to Lender.

*Id*. (emphasis added). JP Morgan has adduced evidence that WaMu mailed three separate notices of its intent to accelerate the sums under the Mortgage to Patricia Chiappetta at the Property address. (*See* 9/05/2006 Notice, Doc. No. 249-2; 11/06/2006 Notice, Doc. No. 249-3; 12/05/2006 Notice, Doc. No. 249-4.) The Mortgage

---

[3] The Ohio appellate court's decision in *Richards* is apparently one of the "subsequently decided" Ohio cases on which Defendants rely in arguing that new case law requires this Court to re-examine the issue of whether WaMu satisfied the notice provision of the Mortgage. However, this Court cited *Richards* in its November 2011 report and recommendation. ((11/08/2011 R&R at 17, Doc. No. 250 at 17.)

-10-

lists Patricia Chiappetta and John Chiappetta as borrowers. (Mortgage at 1, Doc. 1-2 at 1.) Defendants concede that these notices were "proper with regards to Patricia Chiappetta." (Defendants' Summary Judgment Motion at 1, Doc. No. 266 at 1.) Under the terms of the Mortgage, the notices sent by WaMu to Patricia Chiappetta were sufficient to satisfy the notice provision with respect to John Chiappetta as well, and, thus this argument lacks merit.[4]

### 2. WaMu Had Standing to Bring This Action in Foreclosure.

Defendants next contend that WaMu lacked standing to bring this action in foreclosure because, at the time that it filed the Complaint, WaMu failed to provide documentation demonstrating that it, rather than Long Beach, held the Note and Mortgage. According to Defendants, because WaMu lacked standing to bring the case, JP Morgan was not properly substituted as plaintiff in this matter. This argument is patently without merit.

The evidence demonstrates that, at the time that WaMu filed the Complaint in this case, WaMu was the owner of the Note and Mortgage, having acquired Long Beach's assets as its successor-in-interest in July 2006. (*See* Affidavit of William L. Lynch ("Lynch Aff.") at ¶¶ 7-8, Doc. No. 6-1 at ¶¶ 7-8.) Defendants do not dispute this.[5]

---

[4] In their Reply, Defendants argue that, in this case, "applicable law" requires notice to both John Chiappetta and Patricia Chiappetta "because Ohio law considers the notice provisions in paragraph 22 of the [M]ortgage to be a condition precedent to foreclosure. Since both Patricia and John Chiappettas [*sic*] are titleholders they are both entitled to notice before foreclosure." (Defendants' Reply at 3, Doc. No. 272 at 3.) Defendants, however, cite no authority to support this argument.

[5] Defendants conclusorily assert that the "record is devoid of evidence" that JP Morgan obtained their Note and Mortgage from WaMu in September

-11-

Rather, they argue that, because WaMu did not include with its Complaint documentation reflecting this transfer of assets, it lacked standing to bring this action. To make this argument, they rely on two cases, *Federal Home Loan Mortgage Corporation v. Schwartzwald*, 979 N.E.2d 1214, 134 Ohio St.3d 13 (Ohio 2012), and *In re Foreclosure Actions*, Nos. 1:07CV1007, *et seq.*, 2007 WL 403554 (N.D. Ohio Nov. 14, 2007).  However, because the facts of these two cases are clearly distinguishable from the facts of this case, neither decision supports the Defendants' position.

In *Schwartzwald*, the defendants purchased their home in November 2006, and executed a promissory note and mortgage granting Legacy Mortgage a mortgage interest in the property.  Legacy Mortgage then assigned the note and mortgage to Wells Fargo.  The defendants defaulted in January 2009.  On April 15, 2009, the plaintiff, Federal Home Loan Mortgage Company, filed a complaint in foreclosure against the defendants.  However, it was not until May 15, 2009 – one month after the plaintiff commenced the foreclosure action – that Wells Fargo assigned the note and

---

2008. (Defendants' Opposition at 4, Doc. No. 268 at 4.)  As a preliminary matter, Defendants have already unsuccessfully argued that there is a genuine issue of material fact regarding whether JP Morgan holds the Note and Mortgage.(*See* 11/08/2011 R&R at 12-13, Doc. No. 250 at 12-13.).  Defendants and their Counsel are again warned against raising issues that have already been determined by this Court.  Furthermore, Defendants' contention is not supported by the record.  The September 9, 2009 affidavit of Eric Bovee, as well as the documents that accompany it, establish that, on September 25, 2008, JP Morgan acquired substantially all of the assets of WaMu, including the Note and Mortgage at issue here.  (9/09/2009 Bovee Aff. at ¶¶ 3-7, Doc. No. 106-1 at ¶¶ 3-7; Purchase Agreement, Doc. No. 106-2; FDIC Affidavit, Doc. No. 106-3.)  Defendants neither explain why this evidence is insufficient to demonstrate that JP Morgan acquired the Note and Mortgage, nor offer evidence contradicting it.

-12-

mortgage to the plaintiff. The trial court granted summary judgment on foreclosure to plaintiff. The appellate court affirmed, finding that, although the plaintiff did not have standing at the time it filed the complaint (because it was not yet the holder of the note and mortgage), the plaintiff had subsequently cured the defect by the assignment of the mortgage and note prior to the entry of judgment. The Ohio Supreme Court reversed, holding that "[b]ecause standing to sue is required to invoke the jurisdiction of the common pleas court, standing is to be determined as of the commencement of the suit." 979 N.E.2d at 1219, 134 Ohio St.3d at 18 (internal quotation marks omitted). According to the court, because plaintiff did not own the note and mortgage when it filed the complaint, it had not suffered any injury at the time it commenced the foreclosure action and, thus, did not have standing to invoke the jurisdiction of the common pleas court. 979 N.E.2d at 1220, 134 Ohio St.3d at 19.

In *In re Foreclosure Actions*, the Court dismissed 32 pending foreclosure actions because the plaintiffs in those actions failed to comply with the Court's General Order 2006-16. At that time, the General Order required that a complaint in a foreclosure action based on diversity jurisdiction be accompanied by, *inter alia*, "'an affidavit *documenting* that the named plaintiff is the owner and holder of the note and mortgage, whether the original mortgagee or by later assignment, successor in interest or as a trustee for another entity.'"[6] 2007 WL 403554 at *1 (quoting Fifth Amended General

---

<sup>6</sup> The current version of the General Order, issued on December 17, 2007, lists the following as acceptable documentation: "(a) if the plaintiff is the original holder of the note and mortgage, the copies of the note and mortgage; or (b) if the plaintiff is not the original holder of the note and mortgage, a copy of the assignment of the note and mortgage from the

Order 2006-16 at § 1.2.5) (emphasis in original). The Court interpreted the General Order to require more than "an affidavit . . . in which the affiant simply attests that the plaintiff is the owner and holder of the note and mortgage." *Id*. Rather, the Court concluded, "a plaintiff must appropriately document the chain of ownership to demonstrate its legal status *vis-a-vis* the items at the time it files suit on those items. Appropriate 'documentation' includes, but is not limited to, trust and/or assignment documents *executed before the action was commenced*, or both as the circumstances may require." *Id*. (emphasis in original). The Court dismissed the pending foreclosure cases because, in each case, the plaintiff had "either: (1) not timely filed adequate documentation demonstrating that it was the owner at the time it filed suit; or (2) filed documentation indicating that an assignment or execution of trust interest occurred, but occurred after the filing of the complaint." *Id*.

Here, neither case relied on by Defendants compels the conclusion that WaMu – and, by extension, JP Morgan – lacked standing to bring this foreclosure action. Unlike the plaintiff in *Schwartzwald*, there is no dispute that WaMu owned the note and mortgage at the time if filed its Complaint. Accordingly, even under the reasoning of that case, WaMu had standing to commence this foreclosure action.

Furthermore, unlike the plaintiffs in *In re Foreclosure Actions*, WaMu provided documentation demonstrating that, as of July 2006 – some eight months before it filed its Complaint in this matter – it was the owner of the Note and Mortgage. Defendants

> original holder to the plaintiff, executed prior to the filing of the complaint."
> Sixth Amended General Order 2006-16 (Dec. 17, 2007).

-14-

note that WaMu did not submit "the proper evidence of ownership *at the time the complaint was filed*," and argue that, as a result, *In re Foreclosure Actions* requires this Court to dismiss the Complaint. (Defendants' Motion for Summary Judgment at 10, Doc. No. 266 at 10 (emphasis added).) Defendants, however, misstate the holding of the Court in that case, as well as the facts of this case.

In *In re Foreclosure Actions*, the Court was concerned with the parties' compliance with its General Order. Although it is likely that one purpose of the General Order's documentation requirement is to verify that the plaintiff possesses the relevant note and mortgage – and, thus, has standing to bring suit – in its decision, the Court did not address the issue of standing. Nor did it determine that the plaintiffs who failed to file the appropriate documentation lacked standing to sue. Rather, the Court dismissed those cases in which the plaintiff failed to file appropriate documentation because those plaintiffs failed to comply with the General Order. 2007 WL 403554 at *1.

Furthermore, in this case, WaMu filed sufficient documentation to demonstrate that it owned the Note and Mortgage at the time it filed its Complaint. On March 8, 2007, the same date that it filed its Complaint, WaMu filed the affidavit of Rosa Salgado, attesting that WaMu was the owner of the Note and Mortgage. (Salgado Aff. at ¶ 2, Doc. No. 3 at ¶ 2.) On March 9, 2007, this Court's Clerk's Office made an entry on the docket indicating that WaMu had complied with the requirements of the General Order. (*See* Dkt. No. 1:07-683, entry at 3/09/2007.) Thereafter, on March 22, 2007 – before any defendant had filed an answer to the Complaint – WaMu filed its Notice of Merger documents, which included the Lynch Affidavit and documents memorializing

-15-

the restructuring and assets transfers that had resulted in WaMu acquiring the assets of Long Beach. (Lynch Aff. at ¶¶ 3-8, Exs. A-E, Doc. No. 6-1 at ¶¶ 3-8, Exs. A-E.)

Contrary to Defendants' argument, the fact that WaMu did not file the Lynch Affidavit and its supporting documents contemporaneously with the Complaint did not – and does not – require the Complaint's dismissal. As a preliminary matter, the Court did not issue its decision in *In re Foreclosure Actions* until November 2007 – after WaMu filed its Complaint. Further, even if the reasoning of *In re Foreclosure Actions* applied to this case, unlike the plaintiffs in those cases, WaMu "*timely* filed adequate documentation demonstrating that it was the owner at the time it filed suit." 2007 WL 403554 at *1 (emphasis added). Accordingly, *In re Foreclosure Actions* does not require the dismissal of JP Morgans' Complaint in this case. Because there is no genuine issue of material fact regarding whether WaMu: (1) satisfied the notice provision of the Mortgage; and (2) had standing to bring this foreclosure action, it is recommended that the Court deny Defendants' motion for summary judgment.

### 3. JP Morgan is Entitled to Judgment on the Note and Foreclosure Under the Terms of the Mortgage.

Under Ohio law,[7] a party establishes entitlement to foreclosure by proving the following elements: (1) execution and delivery of a valid note and mortgage; (2) recording of the mortgage; (3) default under the terms of the note and mortgage;

---

[7] Because this is a diversity case, this Court applies the law of the forum state to substantive issues. *See* 28 U.S.C. § 1652; *Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 426-27 (1996) (citing *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78-79 (1938)). There is no dispute that Ohio law controls the substantive issues in this case.

and (4) an amount due. *See First Nat'l Bank of America v. Pendergrass*, NO. E-08-048, 2009 WL 1865127, at *3 (Ohio Ct. App. June 30, 2009). There is no genuine issue of material fact with respect to any element of foreclosure in this case. Patricia Chiappetta admitted that she signed the Note and Mortgage. (Transcript of 2/15/2011 Hearing at 8:7-13, Doc. No. 273 at 8:7-13) There is no dispute that John Chiappetta signed the Mortgage. (10/12/2011 Affidavit of John Chiappetta at ¶ 5, Doc. No. 247-1 at ¶ 5.) This Court has already determined that the Mortgage is valid, is held by JP Morgan, and is a valid lien on the Property. Patricia Chiappetta has admitted that she defaulted under the terms of Note. (Transcript of 2/15/2011 Hearing at 20:19-22, Doc. No. 273 at 20:19-22.) Finally, the Salgado Affidavit, which was filed contemporaneously with the Complaint, established the amounts due under the terms of the Note and Mortgage: (a) principal in the amount of $431,568.53, exclusive of interest, costs and attorneys fees; and (b) interest on the unpaid principal at the rate of 7.65% from October 1, 2006. (Salgado Aff. at ¶¶ 2, 8, 9, Doc. No. 3 at ¶¶ 2, 8, 9.)[8] Accordingly, JP Morgan is entitled to judgment on the Note and in foreclosure.

---

[8] Defendants argue that JP Morgan's failure to support its Summary Judgment Motion with an affidavit is "especially problematic since the [N]ote is an adjustable rate note so [JP Morgan has failed to demonstrate the amount that is currently due under the [N]ote." (Defendants' Opposition at 13, Doc. No. 268 at 13.) However, Rule 56 of the Federal Rules of Civil Procedure permits a party to support a factual position by "citing to particular parts of materials in the record, including . . . affidavits or declarations." (Fed. R. Civ. P. 56(c)(1)(A).) Furthermore, the Salgado Affidavit establishes the amount due as a result of Patricia Chiappetta's default.

-17-

### III.     Conclusion

For the foregoing reasons, the Magistrate Judge recommends that the Court deny Defendants' motion for summary judgment, grant JP Morgan's motion for summary judgment, and direct JP Morgan to proceed with foreclosure.

s/ <i>Nancy A. Vecchiarelli</i><br>U.S. MAGISTRATE JUDGE

Date: February 4, 2013

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1).  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).